CHANNELLOCK, INC., Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (REYNOLDS), Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2012.

Decided May 8, 2013.

Publication Ordered July 10, 2013.

Richard E. Bordonaro, Erie, for petitioner.

Christopher J. Youngs, Meadville, for respondent L. Thomas Reynolds.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge (P.), and COVEY, Judge.

OPINION BY Judge McGINLEY.

Channellock, Inc. (Employer) attacks the order of the Workers' Compensation Appeal Board (Board) which reversed the Workers' Compensation Judge's (WCJ) grant of Employer's petition to modify/suspend benefits and the denial of L. Thomas Reynolds's (Claimant) petition to reinstate/modify. The Board affirmed the WCJ's grant of Claimant's penalty petition. The Board denied Claimant's request for reasonable contest attorney fees and awarded Claimant reasonable litigation costs in the amount of $4,693.59.

## I. Background.

On July 31, 2001, Claimant sustained an injury within the course and scope of his employment with Employer. Claimant was inside a small tank cleaning it. He slipped and fell backwards and struck his back against a metal bar. Claimant felt immediate pain in his low back and buttocks. By decision dated May 25, 2005, the WCJ determined that Claimant sustained an annular tear and a herniated

disk at the L5–S1 level. The WCJ awarded Claimant a period of total disability benefits followed by ongoing partial disability benefits. Claimant underwent surgery for the work-related injury in February 2002. In May 2002, Claimant returned to work in a modified duty position in a different part of Employer's plant. That portion of the plant subsequently closed. Claimant returned to the portion of the plant where he worked at the time of his injury. By that point Claimant was not required to do any work and sat and read and performed crossword puzzles.

In December 2003, Claimant fell asleep at work and was disciplined in writing. Claimant requested a move to a position where he would be kept mentally alert. Employer transferred him to a position where he cleaned pliers. Claimant believed that the job requirements exceeded his medically imposed restrictions. Claimant continued to perform the job until the end of March 2004. At that point, his physician instructed him to stop working.

Employer petitioned to terminate Claimant's benefits and alleged that he fully recovered. Claimant petitioned to reinstate benefits and alleged that, as of March 24, 2004, he suffered a recurrence of total disability. The two petitions were consolidated. The WCJ denied the termination and granted the reinstatement petition and concluded that Claimant was entitled to total disability benefits from March 24, 2004, onward. The Board affirmed. Employer petitioned for review with this Court and contended that the Board erred when it affirmed the reinstatement of benefits. This Court affirmed because the WCJ concluded that the no duty position was not within Claimant's capabilities because Claimant had difficulty staying awake due to his prescribed medication. Employer had previously reprimanded Claimant for falling asleep on the job and informed Claimant that the next time he fell asleep would result in his termination. *Channellock, Inc. v. Workers' Compensation Appeal Board (Reynolds)*, 965 A.2d 1239 (Pa.Cmwlth.2008).

## II. Current Controversy.

### A. Petitions.

In the termination petition, Employer alleged that Claimant fully recovered from his work-related injury based upon the evaluation of Thomas Kramer, M.D. (Dr. Kramer). The petition was amended to include a request for suspension of compensation due to the fact that work was available without loss in earnings to Claimant at regular, light, or even no duty work.

On June 3, 2008, Claimant petitioned for penalties and alleged that when he returned to a no duty job (No Duty Job) on March 31, 2008, his wages were less than his average weekly wage, and he alleged that he had not received a check since the pay period ending March 30, 2008. The penalty petition also alleged that Claimant was entitled to partial disability benefits which Employer unilaterally suspended.

On August 1, 2008, Claimant petitioned to reinstate benefits and requested a reinstatement to total disability status. Claimant alleged[1] that he went off work at the No Duty Job and experienced a worsening of his condition which resulted in a decrease in earning power.[2]

---

1. On December 1, 2008, Claimant filed a modification petition in which he disputed an impairment rating evaluation which found that he was less than fifty percent disabled and allowed Employer to unilaterally modify his benefits from total to partial disability status. The WCJ dismissed this petition. Claimant did not appeal.

2. All the petitions were consolidated before the WCJ.

### B. Evidence.

Claimant testified that since he underwent surgery in February of 2002, his back never improved enough for him to return to a normal lifestyle and normal activities. Notes of Testimony, June 11, 2008, (N.T.) at 27; Reproduced Record (R.R.) at R0063. He described his symptoms which started in his low back:

I feel it more in the right buttocks cheek, and it goes down the right leg all the way to the feet. I have pins and needles, more in the right feet [sic], but the more intense the pain is, the more I can feel it on the left side, too.

N.T. at 28; R.R. at R0064. The pain affected his ability to focus and he became agitated more quickly than when he was relaxed. N.T. at 33; R.R. at R0069. Claimant was directed by Donald Hornstein (Hornstein), Employer's vice president of human resources, to return to work on March 31, 2008, at the No Duty Job. N.T. at 44; R.R. at R0080; Notes of Testimony, September 5, 2008, (N.T. 9/5/08) at 11; R.R. at R0099. He testified that he had fallen asleep doing this "job" before and would be terminated if it happened again. N.T. 9/5/08 at 12; R.R. at R0100. He attributed falling asleep primarily to the medication he took. N.T. 9/5/08 at 12; R.R. at R0100.

Claimant testified that Hornstein sent him to sit on a chair in the cafeteria. N.T. 9/5/08 at 23; R.R. at R0111. Claimant believed that he was put on display and subject to employee gossip. He was then sent to sit on a loveseat in Hornstein's office. N.T. 9/5/08 at 27; R.R. at R0115. Claimant indicated that the No Duty Job was "emotionally and physically too much for me to continually do every day, and he [Claimant's doctor] agreed that I would have that problem, but he had wrote [sic] a slip that said—recommended me to be re-moved from the no duty job." N.T. 9/5/08 at 30; R.R. at R0118.

Claimant presented the deposition testimony of his treating pain management specialist, Anthony J. Colantonio, M.D. (Dr. Colantonio), a board-certified anesthesiologist with certification for a pain management specialty. Dr. Colantonio first treated Claimant on June 22, 2004. He examined Claimant twenty-seven more times between June 22, 2004, and the date of the deposition, November 10, 2008. Deposition of Anthony J. Colantonio, M.D., November 10, 2008, (Dr. Colantonio Deposition) at 16; R.R. at R0340. In addition to physical problems, Dr. Colantonio believed there was a relationship between Claimant's physical pain and depression. Dr. Colantonio Deposition at 17; R.R. at R0341. Dr. Colantonio opined that Claimant could not return to his time of injury job because he had difficulty walking and finding a comfortable position. Dr. Colantonio testified that Claimant could not perform a job where he was on his feet most of the day on a hard floor. Dr. Colantonio Deposition at 21–22; R.R. at R0345–R0346. He also testified that Claimant told him he was in "misery" when he worked the No Duty Job. Dr. Colantonio Deposition at 23; R.R. at R0347. Dr. Colantonio signed an "off-work slip" for Claimant to stop working the No Duty Job because Claimant was in "mental anguish by having to go in and perform an oxymoronic job of a no-duty job." Dr. Colantonio Deposition at 24; R.R. at R0348.

Hornstein testified that Claimant returned to work in the customer service department where he was responsible for picking up a pair of pliers, inserting the pliers into an envelope along with some literature from Employer and for mailing it to potential customers. Notes of Testimony, November 6, 2008, (N.T. 11/6/08) at 30; R.R. at R0198. Claimant worked

there from March 31, 2008, until sometime in May when he came to Hornstein and told him the job was too much for him and he requested that he be placed in the No Duty Job. N.T. 11/6/08 at 32; R.R. at R0200. Hornstein stated that if Claimant were to again fall asleep on the job, he would not be immediately terminated and explained Employer's progressive discipline policy.[3] N.T. 11/6/08 at 35–36; R.R. at R0203–R0204.[4]

Employer presented the deposition testimony of Dr. Kramer, a board-certified orthopedic surgeon with a specialty in spine surgery. On January 15, 2008, Dr. Kramer examined Claimant, took a history, and reviewed medical records. Dr. Kramer opined that Claimant had reached maximal medical improvement as of the date of the examination with respect to his work-related injury and work-related disc surgery. He believed that there "was clearly no ongoing objective abnormalities to substantiate the ongoing complaints of pain as well as his inability to work at that time." Deposition of Thomas D. Kramer, M.D., October 1, 2008, (Dr. Kramer Deposition) at 16; R.R. at R0296. Dr. Kramer found nothing in the physical examination to substantiate the need for ongoing narcotic medication. Dr. Kramer further testified that Claimant was capable of performing a light duty job with no lifting of more than twenty pounds. Dr. Kramer Deposition at 20; R.R. at R0297. Dr. Kramer also testified that he saw no reason why Claimant could not return to his time of injury job. Dr. Kramer Deposition at 23; R.R. at R0298. On cross-examination, Dr. Kramer stated that "[t]here was definite magnification of symptoms and inconsistencies" by Claimant. Dr. Kramer Deposition at 29; R.R. at R0300. He also opined that Claimant was fully recovered. Dr. Kramer Deposition at 29; R.R. at R0300. Dr. Kramer admitted that he did not state in his original medical report that Claimant was fully recovered. Dr. Kramer Deposition at 36–37; R.R. at R0301–R0302. He acknowledged that "maximum medical improvement" and "fully recovered" mean two different things. Dr. Kramer Deposition at 38; R.R. at R0302.[5]

### C. WCJ's Decision.

The WCJ denied the petition to terminate benefits. The WCJ granted the petition to suspend benefits amended to a petition to modify and modified Claimant's benefits to $208.08 per week based on the availability of full time no duty work at a rate of $401.00 per week. The WCJ granted the penalty petition and ordered Employer to pay a penalty equal to twenty percent of the partial disability due Claimant between March 31, 2008, and July 24, 2008. The WCJ denied Claimant's reinstatement petition and the petition to mod-

3. Heath Hanmore (Hanmore), union steward, testified on behalf of Claimant concerning the operation of the heat treat area for Employer where Claimant worked prior to his injury. On cross-examination, Hanmore corroborated Hornstein's testimony concerning the progressive discipline policy. N.T. 11/6/08 at 93–94. (These pages were not included in the Reproduced Record.)

4. Elizabeth Ellen Anderhalt, secretary for Employer's human resources department, testified that Claimant could lie down on the sofa in Hornstein's office. Notes of Testimony, November 6, 2008, (N.T. 11/6/08) at 12; R.R. at R0180.

5. Employer also presented the deposition testimony of Michael J. Jurenovich, D.O. (Dr. Jurenovich) in support of the impairment rating evaluation. After examining Claimant, taking a history, and reviewing medical records, Dr. Jurenovich determined that Claimant was at maximum medical improvement. Deposition of Michael J. Jurenovich, D.O., April 7, 2009, at 15–16; R.R. at R0396–R0397. That portion of the WCJ's decision is not before this Court.

ify compensation benefits. The WCJ made the following relevant findings of fact:

15. Based on all the evidence in the record, this Judge makes the following findings:

a. The Claimant is not fully recovered from his July 31, 2001 work injury. The Employer's expert, Dr. Kramer, opined the Claimant was fully functionally recovered and was at maximum medical improvement. He explained that he did not opine the Claimant was 'fully recovered' because he had had back surgery.

b. The claimant continues to have pain and symptoms associated with his July 31, 2001 work injury and is not fully recovered. In so finding, this Judge credits the Claimant's testimony as to his condition and symptoms.

c. The claimant is not capable of performing his date of injury job in heat treat or the modified utility job. This Judge rejects the Employer's experts [sic], Dr. Kramer, opinion that the Claimant does not require medications or restrictions. Dr. Kramer first opined that the Claimant could do light duty work, but later issued a supplemental report indicating the Claimant required no restrictions and could do his date of injury job. Dr. Kramer's opinions are rejected. Dr. Kramer's only explanation for the change of opinion was that in his first report he gave the Claimant the benefit of the doubt, but when asked to clarify his position on the Claimant's disability he reviewed his examination findings and felt the Claimant could do his regular job. This explanation as to the reason for his change is not convincing.

d. The Claimant is capable of performing the 'no duty job.' The problem with this job before was the Claimant's need to rest and at times sleep. Now, the Employer is willing to accommodate this need. The claimant may 'not like' this job, but it is a job he can do as it requires nothing more than for the Claimant to be present, sit or stand as comfort dictates and rest/sleep if need be. These activities are no different than the Claimant's activities at home.

. . . .

f. Dr. Colantonio's opinion that the Claimant cannot do this job because it is a moronic job and depresses the Claimant is rejected. Dr. Colantonio provided no medical reason the claimant could not physically do the job. Further, he acknowledged that the Claimant's psychiatrist indicated the Claimant could to [sic] the job from a psychological perspective.

g. The Employer did not pay the Claimant the partial disability due him between March 31, 2008—July 24, 2008, until June 9, 2008 when the Employer issued a check for $1,746.80. The Employer offered no reasonable excuse for its failure to pay the Claimant the partial disability benefits due him. Therefore penalties of 20% of the partial disability ($1,746.80) are awarded to the Claimant.

WCJ's Decision, November 13, 2009, Finding of Fact No. 15(a–d) and (f–g) at 6–7; R.R. at R0445–R0446.

### D. Board Opinion.

Both parties appealed to the Board. Employer appealed the denial of the termination petition on the basis that the WCJ erred when he rejected Dr. Kramer's unequivocal opinion that Claimant fully recovered from his work-related injury and where he did not find that Claimant was capable of performing his time of injury job or a modified duty job. Employer also contended that the WCJ erred when she granted the penalty petition because there was no evidence that Employer intended

to deny Claimant benefits and Claimant was paid the appropriate benefits, although they were a little late. Claimant contended that the WCJ erred when she granted Employer's suspension petition because she was collaterally estopped from finding that the No Duty Job offered to Claimant was available.

The Board affirmed the denial of the termination petition because Employer failed to establish that Claimant was fully recovered because the testimony of Dr. Kramer was rejected by the WCJ, the factfinder.

With respect to the grant of Employer's modification petition, the Board found that Claimant could still be fired for sleeping on the job even with a progressive discipline policy. The Board determined that this Court had previously affirmed the WCJ's conclusion that the medication Claimant took for pain caused him to become drowsy and fall asleep. Claimant continued to take similar medication. The Board determined:

> In the instant case, the no-duty job offered to Claimant, and which Claimant performed from March 2008 until July 2008, was the same no-duty position that the Commonwealth Court found not available for the reasons set forth above. While it now required Claimant fall asleep four times before termination, termination is still the end result for falling asleep. Dr. Colantonio testified that the medications Claimant was taking could cause drowsiness and Claimant testified that he was still taking narcotics, which cause him to be drowsy, and on several occasions while working in the no-duty position, he fell asleep and had to be awakened by other employees. Thus because nothing has changed factually regarding the no-duty position, the effect Claimant's medication has on him … and the fact that Claimant can

still be terminated for falling asleep at work, collateral estoppel is applicable and we reverse the WCJ's grant of Defendant's [Employer] Suspension Petition because the no-duty job was not 'available' to Claimant as determined in the prior litigation.

Defendant [Employer] avers that collateral estoppels [sic] does not apply because the opinions of Dr. Kramer were the basis for the WCJ's decision in employer's favor, and constituted new evidence establishing a change in Claimant's condition. We disagree. Where termination has been denied, and the employer again seeks termination as of a later date, the employer must show that a change in physical condition has occurred since the preceding disability determination. … The WCJ based her determination that Claimant could now perform the no-duty job upon a fact, not supported by the evidence of record, that Defendant [Employer] was willing to accommodate Claimant and allow him to sleep while at work; she did not base her Decision upon Dr. Kramer's testimony. Further, because the WCJ rejected Dr. Kramer's testimony, Defendant [Employer] could not prove that there was a change in Claimant's physical condition since the prior determination. As Claimant's physical condition was the same, and the job remained unavailable due to the reasons set forth above, collateral estoppels [sic] does, in fact, apply. Therefore, we reject Defendant's [Employer] argument to the contrary. (Footnotes and citation omitted).

Board Opinion, September 30, 2011, (Opinion) at 16–17; R.R. at R0465–R0466.

The Board also determined that Claimant was entitled to a reinstatement of benefits "because the no-duty job is not 'available' to him as determined previously. Thus he has suffered a wage loss through

no fault of his own. Further, Claimant credibly testified that he still suffers pain and symptoms from his work-related injury; therefore, his injury continues." Opinion at 17; R.R. at R0466.

The Board affirmed the grant of the penalty petition because Employer suspended benefits without following the required procedures. The Board reversed the denial of litigation costs because Claimant successfully defended the termination petition and prevailed on the penalty petition and awarded Claimant $4,693.59 in costs. The Board denied Claimant's request to remand for a determination of whether Employer's contest was reasonable.

### E. Employer's Arguments.

Employer contends that the Board erred when it reinstated Claimant's benefits due to a legal technicality based upon the doctrine of collateral estoppel, that the Board usurped the jurisdiction of the WCJ as the sole trier of fact when it found that Claimant was incapable of performing at least modified duty work and reinstated total disability benefits, that the WCJ and the Board committed an error of law when they found that Employer violated the provisions of the Workers' Compensation Act (Act) [6] in assessing penalties due to an alleged nonpayment of indemnity benefits, that the WCJ and the Board overlooked the substantial, competent, and credible evidence presented by Dr. Kramer that Claimant had fully recovered from his work injury and, as a matter of law, should have granted a termination, and that the WCJ and the Board committed an error of law when they did not grant Employer's suspension petition based upon the job that was offered to Claimant to which he returned and subsequently walked off when his time-of-injury earnings were available. [7]

### 1. Collateral Estoppel.

■ Initially, Employer contends that the Board erred when it reinstated Claimant's benefits due to a legal technicality based upon the doctrine of collateral estoppel. Employer admits that this Court previously affirmed that the original No Duty Job was not available to Claimant because Claimant could have been discharged or fired if he fell asleep on the "job" as a result of his use of prescription medication. Employer argues that the present situation is different because in the present matter Claimant returned to work on March 31, 2008, in a light duty position which was subsequently modified to a No Duty Job at his request. Also, Hornstein testified that the policy for disciplining employees who fell asleep while at work had changed in that Employer now utilized a progressive discipline policy so that four instances of falling asleep in a one year period would have to take place for an employee to be discharged.

In *Weney v. Workers' Compensation Appeal Board (Mac Sprinkler Systems, Inc.)*, 960 A.2d 949 (Pa.Cmwlth.2008), *appeal denied*, 601 Pa. 691, 971 A.2d 494 (2009), this Court recounted the criteria necessary to establish res judicata and collateral estoppel:

> Initially, *we note that technical res judicata and collateral estoppel are both encompassed within the parent doctrine*

---

**6.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

**7.** This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

*of res judicata, which 'prevents the relitigation of claims and issues in subsequent proceedings.'* Henion [*v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.)* ], 776 A.2d [362] at 365 [ (Pa.Cmwlth.2001) ].

Under the doctrine of technical res judicata, often referred to as claim preclusion, 'when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded.' *Id.* In order for technical res judicata to apply, there must be: '(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.' *Id.* at 366. Technical res judicata may be applied to bar 'claims that were actually litigated as well as those matters that *should have been litigated.' Id. .... 'Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.' Id.*

The doctrine of collateral estoppel often referred to as issue preclusion, 'is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated.' *Pucci v. Workers' Compensation Appeal Board (Woodville State Hosp.),* 707 A.2d 646, 647–48 (Pa.Cmwlth.1998). Collateral estoppel applies where:

(1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with the party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceed-

ing was essential to the judgment. *Id.* at 648.

*Weney,* 960 A.2d at 954 (emphasis in original and added).

The Board determined that collateral estoppel applied here because in the original litigation this Court agreed with the WCJ's conclusion that the medication Claimant took as a result of the work-related injury rendered him incapable of performing the No Duty Job because he had difficulty meeting the requirement of staying awake. Claimant had been warned that sleeping on the job could result in his discharge. This Court accepted the Board's reasoning that credible evidence as determined by the WCJ supported a finding that Claimant could not perform any job offered by Employer that required him to remain awake. *Channellock, Inc. v. Workers' Compensation Appeal Board (Reynolds),* 965 A.2d at 1243.

Employer argues that collateral estoppel does not apply here because the issue decided in the prior case was different. Separate job offers were involved, the policy regarding sleeping on the job was different, the nature of the No Duty Job was different in that Claimant could sit or lie down as required, and Claimant's medical condition changed.

The issue in the original litigation was whether the No Duty Job was available to Claimant because Employer required him to remain awake while at his post and the medications he was prescribed as a result of his work-related injury caused him to fall asleep.

The present issued presented is whether the No Duty Job was available to Claimant who continued to experience drowsiness and fall asleep. While Employer modified its disciplinary policy to a progressive discipline policy, this policy could still result in termination for sleeping on the job, albeit not until the fourth violation in a

year's time. Although the WCJ found that Employer's policy no longer completely foreclosed sleeping on the job, the Board found there was no support for that finding in the record. As a result, the issues in each litigation were the same: whether Claimant who continued to have a problem staying awake due to the medications to treat the work-related injury and whether falling asleep could result in disciplinary action taken against Claimant up to and including termination. This Court finds no error on the part of the Board.[8]

## 2. Whether Board Usurped the Authority of the WCJ?

■ Employer next contends that the Board usurped the jurisdiction of the WCJ as the sole trier of fact when it found that Claimant was not capable of performing at least modified duty work and reinstated total disability benefits.

■ A claimant seeking a reinstatement of benefits following a suspension of benefits must prove that, through no fault of his or her own, the (1) claimant's earning power is once again adversely affected by the disability, and (2) the disability that caused the original claim continues. *Pieper v. Ametek–Thermox Instruments Div. and Workmen's Compensation Appeal Board,* 526 Pa. 25, 584 A.2d 301 (1990). So, the WCJ must determine whether the claimant established a continuation of his disability and loss of earnings. *Pieper.* As the burdened party, the claimant has to meet both his burden of production and burden of persuasion regarding the required elements. *Osram Sylvania v. Workers' Compensation Appeal Board (Wilson),* 893 A.2d 186 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 588 Pa. 787, 906 A.2d 545 (2006).

An employer may rebut a claimant's proof of loss of earnings by establishing the availability of work that claimant is capable of performing. *Todloski v. Workmen's Compensation Appeal Board (Supermarket Service Corp.),* 115 Pa.Cmwlth. 138, 539 A.2d 517 (1988).

Here, Claimant established that he suffered a loss of earnings when he could not perform the No Duty Job without risk of falling asleep and facing disciplinary action. Claimant established that his earning power was affected by the injury as the Board determined he could not even perform the No Duty Job. The WCJ found that Claimant could not perform the time of injury job or the modified duty job and that Claimant continued to have pain and symptoms associated with the work-related injury and was not fully recovered.

Employer asserts that the Board usurped the WCJ's role as factfinder. The Board did not do so. The Board made a legal determination that relitigation of the availability of the no duty position was barred by collateral estoppel. The Board did not overstep its authority.

## 3. Whether the Imposition of Penalties was in Error?

■ Employer next contends that the WCJ and the Board committed an error of law when it determined that Employer violated the Act due to an alleged nonpayment of benefits and assessed penalties.

■■ The assessment of penalties, as well as the amount of penalties imposed, is discretionary, and absent an abuse of discretion by the WCJ, this Court will not overturn the WCJ's decision on appeal. *Westinghouse Electric Corporation v. Workers' Compensation Appeal Board (Weaver),* 823 A.2d 209 (Pa.Cmwlth.2003). "An abuse of discretion is not merely an

8. The WCJ did not accept the testimony of Dr. Kramer, Employer's medical witness.

error of judgment but occurs, *inter alia,* when the law is misapplied in reaching a conclusion." *Id.* at 213–214. A judge's ruling on a penalty petition is to be reversed only if the judge has abused his discretion and misapplied the law. *Westinghouse.*

■ Claimant alleged that he was entitled to penalties because Employer unilaterally suspended benefits when he returned to the No Duty Job, and the WCJ found that to be the case. An employer is only permitted to suspend benefits when it follows prescribed statutory procedures. *Robb, Leonard & Mulvihill v. Workers' Compensation Appeal Board (Hooper),* 746 A.2d 1175 (Pa.Cmwlth.2000). Employer did not follow the required procedures.

Employer asserts that because it ultimately paid any benefits due to Claimant, it should not be assessed penalties. Still, it did not pay the benefits when obligated to do so. This Court finds no abuse of discretion in the award of penalties.

### 4. Whether Dr. Kramer's Testimony Supported Termination?

■ Employer next contends that the WCJ and the Board overlooked substantial, competent, and credible evidence presented by Dr. Kramer that Claimant was fully recovered from his work-related injury and, as a result, the WCJ and Board erred when they did not grant a termination of benefits.

■ The employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased. In a case where the claimant complains of continued pain, this burden is met if an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which

either substantiate the claims of pain or connect them to the work injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 550 Pa. 319, 327, 705 A.2d 1290, 1293 (1997).

Here, Dr. Kramer testified that Claimant was fully recovered from the work-related injury, that he could return to his time of injury job, and had no objective medical findings to substantiate any claims of pain. However, the WCJ did not find Dr. Kramer credible. The WCJ, as the ultimate finder of fact in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki),* 140 Pa. Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied,* 529 Pa. 626, 600 A.2d 541 (1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock),* 667 A.2d 262 (Pa.Cmwlth.1995). Because the WCJ did not accept Dr. Kramer's testimony, Employer failed to meet its burden to establish that it was entitled to a termination of benefits.

### 5. Whether Employer was Entitled to a Suspension?

■ Finally, Employer contends that the WCJ and the Board erred when they did not grant Employer's suspension petition based upon the job that was offered to Claimant and to which he returned and subsequently walked off was available. Employer bases its argument primarily on the testimony of Dr. Kramer to establish that Claimant was fully recovered and capable of performing an available job that was available at no loss of earnings.

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987),[9] our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

1. The employer must produce medical evidence of a change in the employee's condition.

2. The employer must produce evidence of a referral or referrals to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then the claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

Employer asserts that Dr. Kramer's testimony provided evidence of a change in Claimant's condition such that he was capable of performing the jobs that were offered to him. Once again, the WCJ, the factfinder, rejected Dr. Kramer's testimony. That testimony cannot support Employer's claims that the WCJ should have suspended Claimant's benefits.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 8th day of May, 2013, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

9. Because Employer sought a suspension through a change of medical condition and a job offer rather than through an earning power assessment, *Kachinski* is still in play.