IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet Drummond, alleged dependent :
of Tyrone Drummond, deceased, :
             Petitioner :
              :
           v. :
              :
Workers' Compensation Appeal :
Board (Leadership Learning Partners), : No. 2210 C.D. 2014
            Respondent : Submitted: July 17, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY               FILED: November 17, 2015

Factual Background

Before this Court is the Petition for Review of Janet Drummond, alleged dependent of Tyrone Drummond (Decedent), challenging the order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) denial of decedent's Claim Petition for the specific loss of use of the right leg.

Decedent was employed as a teacher for Leadership Learning Partners (Employer) and suffered an injury to his right leg (knee) after a fall down stairs at work on October 23, 2003. November 5, 2014 Opinion of the Board (Board Opinion) at 2; December 24, 2012 Opinion of the WCJ (WCJ Opinion) at 2; Reproduced Record (R.R.) at 4a, 16a. Employer accepted liability for the injury by

way of a Notice of Compensation Payable and began payment of temporary total disability benefits. Employer's Brief at 2-3. This work-related fall resulted in a tear to the quadriceps muscle of the right leg which required surgical repair the next day. WCJ Petition at 5; R.R. at 19a.

Decedent was obese. He weighed approximately 350 pounds at the time of the work injury and was a non-insulin dependent diabetic. WCJ Opinion at 3; Deposition of Jack E. Pickering, M.D. (Dr. Pickering), at 26, 32, December 6, 2004 letter of Nand Ram, M.D., PH.D (Dr. Ram or Dr. Ram Letter) at 1; R.R. at 17a, 39a, 44a, 56a. After the surgery, he came under the care of James McGuire, DPM (Dr. McGuire) a podiatric surgeon at Temple Hospital, who specialized in diabetic wound care. He also treated complications that arise with a diabetic patient. WCJ Opinion at 1; December 13, 2010 Deposition of Dr. McGuire (McGuire Deposition #1) at 8-9; March 29, 2011 Deposition of Dr. McGuire (McGuire Deposition #2) at 11; R.R. at 15a, 27a-28a, 36a. Dr. McGuire treated Decedent from 2003 until 2007. WCJ Opinion at 5; McGuire Deposition #1 at 20-23; R.R. at 19a, 30a-3la. Decedent also treated concurrently with Raymond Silk, M.D., a surgeon, and Nand Ram, M.D. (Dr. Ram), an internist, for his diabetes. Board Opinion at 2; Dr. Ram Letter; R.R. at 4a, 56a.

Thereafter, Decedent developed an ulcer on his right big toe which became infected, resulting in the amputation of that toe. Decedent continued to ambulate on the right foot and later developed a pressure sore on the right heel. He was eventually admitted to Thomas Jefferson University Hospital in December, 2007 for a right, below-the-knee amputation. Decedent died on January 14, 2010. WCJ Opinion at 1-2; R.R. at 15a-16a. The cause of death was noted as a

2

consequence of morbid obesity. Certified Record, Exhibit C-9[1]: Employer's Brief at 5. During Decedent's hospitalization from July 20, 2007, to March 8, 2008, he was not treated at all for his right knee or quadriceps injury. The treatment during that time period was for high fever and low blood pressure and subsequently for respiratory failure, infection, toe amputation, obesity and diabetes. WCJ Opinion at 7; R.R. at 21a.

Procedural History

On February 19, 2010[2], Claimant filed a Claim Petition against Employer, alleging that the Decedent sustained a specific loss of his right[3] leg as a direct result of injuries/complications suffered as a result of his work injury of October

---

[1] Exhibit C-9 is Decedent's Death Certificate contained within the Certified Record. The Reproduced Record, compiled by Claimant without filing a designation of contents as required by Pa. R.A.P. 2154, is limited.

Consequently, to the extent that the statements of fact set forth in the parties' briefs are supported by evidence found credible by the WCJ, but not included in the Reproduced Record, this Court will include citations to the Certified Record compiled before the WCJ.

[2] Page 3 of The Claim Petition, contained within the Certified Record, states the "Date of Petition" as February 19, 2009. Page 2 of the Docket from the Board states that the Claim Petition was filed on February 19, 2010. Page 6 of Claimant's Brief infers that the date of the Claim Petition was sometime before Decedent's death on January 14, 2010.

Employer's Answer to Claim Petition was dated March 5, 2010, and received by the Bureau of Workers' Compensation of the Department of Labor & Industry on March 8, 2010.

Pursuant to Section 416 of the Workers' Compensation Act (Act), Act of June 2, 1915 P.L. 736, *as amended*, 77 P.S. §821, Employer has twenty (20) days within which to file its answer to a claim petition. Because Claimant in the matter before the Court did not object to the date of filing of the Employer's Answer to Claim Petition as untimely, this Court presumes that the filing date of the Claim Petition was February 19, 2010, and that Employer's Answer was timely filed.

Due to the amount of time invested by this Court to ascertain the accuracy of the date in question, the Court does not take lightly the lack of accuracy by all involved.

[3] The Claim Petition refers to the amputation of "my left leg". However, the injury and amputation involved the Decedent's right leg. For purposes of accuracy, this Court will make reference to the right leg.

23, 2003. Certified Record, Claim Petition Docket Sheet at 2. After Decedent's death on January 14, 2010, Decedent's mother, Janet Drummond (Claimant) proceeded with the litigation and was designated as "Claimant" by the WCJ assigned to the claim.[4,5] WCJ Opinion at 1; R.R. at 15a.

After hearings and a review of the record, the WCJ did not find that Decedent's diabetes or his diabetic neuropathy worsened, was aggravated or was exacerbated by his October 23, 2003, work related, right leg injury. Similarly, the WCJ did not find that the initial right foot ulcer, which began Decedent's downward health spiral, was caused by a change in gait resulting from the work injury or surgery. Finally, the WCJ did not find that the October 23, 2003, work injury was a significant contributing factor to the 2007 amputation. WCJ Opinion and Order at 10; R.R. at 24a.

The WCJ then concluded, as a matter of law, that Claimant failed to sustain her burden of proving that the amputation of Decedent's right, lower leg was causally related to his accepted October 23, 2003, work injury. WCJ Opinion at 7-8; R.R. at 21a-22a. Accordingly, the Claim Petition was dismissed. WCJ Opinion at 8; R.R. at 22a.

---

[4] Although Claimant was married, employed and living in Virginia at the time of Decedent's work related injury, she claimed to be Decedent's dependent for purposes of litigation. Respondent's Brief at 2.

[5] Because the WCJ did not find a causal relationship between Decedent's 2003 work related knee injury and the 2007 amputation, she did not address the issue of whether Claimant was, in fact, a dependent of Decedent within the meaning of Section 307 of the Act, 77 P.S. §§ 561-562. WCJ Opinion and Order at 10.

Claimant thereafter filed a timely appeal to the Board.[6] By Opinion and Order mailed November 5, 2014, the Board affirmed the Decision and Order of the WCJ and denied the Claim Petition at issue.[7] Claimant then filed a Petition for Review with this Honorable Court.

## Discussion

In her Petition for Review, Claimant contends that the Board erred as a matter of law when it affirmed the WCJ's dismissal of the Claim Petition.[8]

At the outset, Claimant argues that the Board's decision, which was based on the WCJ's findings that portions of Dr. McGuire's testimony were inadmissible because that testimony was based on the opinion of an internist, Dr. Ram, who treated Decedent concurrently for diabetes and whose records were not in evidence, was incorrect. In other words, Claimant argues that Dr. McGuire's opinion testimony was *not* based on hearsay and should not have been dissected using only *sections* of his expert testimony wherein Dr. McGuire deferred to Dr. Ram.

---

[6] Employer filed a protective cross appeal relative to the WCJ's decision to allow Claimant to move forward with a second deposition of her medical witness and asserted that the medical testimony was not "rebuttal". Employer also preserved its challenge to Claimant's dependent status in the event that the Board reversed the WCJ's dismissal of the Claim Petition on any basis.

[7] Because the Board dismissed Claimant's appeal, it did not address any of the issues raised in Employer's protective cross-appeal.

[8] This Court's scope of review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation), 589 A.2d 291 (Pa. Cmwlth. 1991).

Dr. McGuire testified that the work injury, which caused a torn quadriceps muscle in the right knee, resulted in a gait dysfunction, thereby putting extra pressure on Decedent's right, big toe, which resulted in the eventual amputation of that toe and the subsequent pressure sore on the right heel which ultimately led to infection and amputation of the right leg below the knee in 2007. WCJ Opinion at 1-2; Dr. McGuire Deposition #1 at 15-20, 25-28; R.R. at 15a-16a, 29a-30a, 32a. Dr. McGuire opined, based on a reasonable degree of medical certainty, that the October 23, 2003, work injury was a substantial contributing factor to the ulcer on Decedent's right big toe and later his right heel since that injury resulted in a gait deviation of the right leg and caused these complications. Dr. McGuire Deposition #1 at 32; R.R. 32a-33a. Dr. McGuire also testified that Decedent's diabetes was a substantial contributing factor to these amputations. Dr. McGuire Deposition #1 at 29-31; R.R. at 33a.

Dr. McGuire further testified that he not only relied upon Dr. Ram's reports in treating Decedent, but that Dr. McGuire, himself, was copied on Dr. Ram's report and that Dr. Ram's report was part of Decedent's medical file in Dr. McGuire's office.[9]

---

[9] Dr. McGuire testified:

Q. Now in your prior deposition, you were asked whether diabetes was a significant contributing factor to the below the knee amputation, and you stated yes. Would that be correct?

A. Yes.

Q. Do you have an opinion whether his diabetes was aggravated as a result of the 10/23/03 work injury and the subsequent surgery which followed?

…

A: I base that on Dr. Ram's analysis of his diabetic state in his reports to me and his communications to me stated that - -

…

**(Footnote continued on next page…)**

Claimant argues that when evaluating expert testimony, this Court must consider the testimony as a whole and must not base a decision upon a few words taken out of context. See Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel, Inc.), 668 A.2d 131 (Pa. 1995). (A single phrase should not be extracted from a deposition to conclude that opinion was equivocal.) Accord Jordan v. Workmen's Compensation Appeal Board (Consolidated Electrical Distributors), 704 A.2d 1063 (Pa. 1997). (One sentence should not be extracted from physician's twenty seven page deposition and relied upon to reverse the termination of benefits where his testimony, viewed in its entirety, supports the conclusion that employee had recovered).

Finally, Claimant argues that Dr. Ram's report was, in fact, the type of report Dr. McGuire typically relied upon in the treatment of his patients. McGuire Deposition #2 at 9; R.R. at 36a. Thus, Claimant asserts that because Dr. McGuire uses the type of report generated by Dr. Ram in the treatment of Dr. McGuire's

---

**(continued…)**

A:   That his diabetes was exaggerated by the injury. That he had not been insulin an [sic] dependent diabetic prior to the trauma.…
Q.   Let me ask you this, is this the type of report you would rely upon in the treatment a patient?
A.   Yes.
Q.   Did you rely upon this report in this Case?
A.   Yes.
Q.   Did you and Dr. Ram and Dr. Silk and Dr. Moyer carbon copy each other on reports that you did with regard to [Decedent]?
A.   Frequently.
Q.   Was this something that you were carbon copied on from Dr. Ram?
A.   Yes, it was part of his record.

McGuire Deposition #2 at 7-9; R.R. at 35a -36a. (Objections omitted.)

7

patients, those reports have the indicia of reliability to serve as part of the basis of Dr. McGuire's opinion on causation in the controversy presently before the Court.

Conversely, Employer asserts that the WCJ properly sustained Employer's hearsay objection to those portions of Dr. McGuire's rebuttal testimony wherein he discussed the opinions of another physician, Dr. Ram, with regard to the impact, if any, of the 2003 work injury on the progression of Decedent's underlying diabetes.

However, Employer argues that Dr. McGuire did not *rely* upon Dr. Ram's report to form his own opinion as to a causal relationship between Decedent's 2003 work injury and his underlying diabetes. But rather, Employer argues that Dr. McGuire *deferred entirely* to Dr. Ram.

To reiterate from Dr. McGuire's deposition:

Q.    Do you have an opinion whether his diabetes was aggravated as a result of the 10/23/03 work injury and the subsequent surgery which followed?

….

A:    I base that on Dr. Ram's analysis of his diabetic state in his reports to me and his communications to me stated that - -

….

A:    That his diabetes was exaggerated by the injury.

McGuire Deposition #2 at 7-12; R.R. at 35a -36a.  (Objections omitted.)

Consequently, Employer argues that Dr. Ram's report and his opinions contained therein are the essence of hearsay: an out of court statement submitted for the truth of the matter asserted therein.  Commonwealth v. Cassidy, 462 A.2d 270 (Pa. Super. 1983).

The WCJ found that the opinions and reports of Dr. Ram were inadmissible hearsay because "Dr. McGuire did not rely upon Dr. Ram's report to form his own opinion as to a causal relationship "...but rather "adopted Dr. Ram's opinion wholesale " and "deferred to Dr. Ram entirely on the question of causation. … Dr. McGuire cannot simply parrot Dr. Ram's conclusions." Board Opinion at 7; R.R. at 9a.

As further noted by the Board in its opinion which affirmed the WCJ's decision:

> A review of Dr. McGuire's testimony shows that when asked how stress causes blood sugar changes and if that is what happened to Decedent, Dr. McGuire replied, 'I don't know. I think you have to rely on Dr. Ram to determine whether this was - that's what happened in his particular case.' [Citation omitted.] (McGuire Dep., 3/29/11, Pg. 18) Also, Dr. McGuire was asked to explain the pathogenesis of what happened to Decedent. [Dr. McGuire] responded, 'I base that on Dr. Ram's analysis of his diabetic state in his reports to me and his communications to me stated that - that his diabetes was exaggerated by the Injury. That he had not been insulin an (sic) dependent diabetic prior to the trauma.' *Dr. McGuire's complete reliance on Dr. Ram's analysis to determine the cause of Decedent's injury supports the [WCJ's] determination that Dr. Ram's opinion and report do not fall under the hearsay exception because Dr. McGuire did not express his opinion as an expert, but rather he simply repeated those opinions of Dr. Ram.* (Emphasis added.)

Board Opinion at 7; R.R. at 9a.

Medical experts are permitted to express opinions which are based, in part, upon reports which are not in evidence, but which are customarily relied upon

9

by experts in the practice of the profession. <u>Commonwealth v. Thomas</u>, 282 A.2d 693 (Pa. 1971); <u>Primavera v. Celotex Corporation</u>, 608 A.2d 515 (Pa. Super. 1992), *petition for allowance of appeal denied,* 622 A.2d 1374 (Pa. 1993).

Evaluating the weight of the evidence and determining the credibility of the witnesses are functions within the exclusive province of the WCJ. <u>Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)</u>, 652 A.2d 797 (Pa. 1995). Further, substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. <u>Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)</u>, 612 A.2d 434 (Pa. 1992). In performing a substantial evidence analysis, this Court must review the evidence in a light most favorable to the party who prevailed before the factfinder. <u>Birmingham Fire Insurance Company v. Workmen's Compensation Appeal Board (Kennedy)</u>, 657 A.2d 96 (Pa. Cmwlth. 1995); <u>see</u> <u>also</u> <u>Flexer v. Workmen's Compensation Appeal Board (Wilson)</u>, 317 A.2d 53 (Pa. Cmwlth. 1974).

Presently, the Court is mindful of the fact that medical experts are permitted to express opinions which are based, in part, upon reports which are not in evidence, but which are customarily relied upon by medical experts in the practice of the profession. However, in performing a substantial evidence analysis, this Court must review the evidence in a light most favorable to the party who prevailed before the factfinder. Considering the evidence of record in its totality and reviewing the evidence in a light most favorable to the Employer, this Court finds that the Board properly affirmed the WCJ's decision, as the record before them clearly established that the opinions and reports of Dr. Ram were inadmissible hearsay.

Claimant's second argument before this Court is that even if the reports and opinions of Dr. Ram were inadmissible hearsay, reliance by the WCJ and the Board upon that aspect of Dr. McGuire's testimony was only one of the bases of Dr. McGuire's causation opinion. The other basis of Dr. McGuire's causation opinion, which was relied upon to render his opinion, was the aggravation/exaggeration of his diabetes and its sequelae[10] by the work injury. See McGuire Deposition #2 at 7; see also R.R. at 35a.

Claimant asserts that because Dr. Ram's reports were part of Decedent's medical file in Dr. McGuire's office, Dr. McGuire was, in essence, relying on Decedent's records contained in Dr. McGuire's file when he described how he relied on Dr. Ram's report to treat Decedent. Claimant argues that it would be difficult to find a more substantial guarantee of trustworthiness to satisfy an exception to the hearsay rule and admit causation testimony of Decedent's specific loss into the evidentiary record.

Employer, on the other hand, argues that Dr. McGuire is a podiatrist, that he was certified in wound care and that a large portion of his patient population had diabetes. See McGuire Deposition #1 at 8-9; see also R.R. at 27a-28a. Employer noted that, as Dr. McGuire acknowledged, an internist, not a podiatrist, would provide the patient with treatment for managing the diabetes itself. See McGuire Deposition #2 at 5-7; see also R.R. at 35a-36a.

---

[10]Sequelae are defined as "morbid condition[s] following or occurring as a consequence of another condition or event." http://medical-dictionary.thefreedictionary.com/sequelae (last visited 10/22/15) citing Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health, Seventh Edition. Copyright 2003 by Saunders, an imprint of Elsevier, Inc. All rights reserved.

11

Further, Employer's expert, cardiologist Jack Pickering, M.D. (Dr. Pickering), testified at deposition that Decedent's gait abnormality had nothing to do with the Decedent's amputations, which Dr. Pickering believed were caused by morbid obesity, diabetes and poor hygienic management of the ulcers on Decedent's right foot. WCJ Opinion at 6; R.R. at 20a. Dr. Pickering further testified at deposition: "Dr. McGuire is a podiatrist and is no way qualified to discuss the progression of diabetes or did he acknowledge of course that it's his position as a podiatrist to refer people with obesity and for weight control to an internist...." Deposition of Dr. Jack E. Pickering at 27; R.R. at 40a.

Employer asserts that the WCJ, acting in her role as the ultimate finder of fact and arbiter of credibility found the opinions of Claimant's medical expert, Dr. McGuire, less persuasive than those of Employer's expert, Dr. Pickering.

Where a claimant's medical expert testifies that he based part of his causation opinion on another treating physician's opinion and relied on that opinion to treat and diagnose a patient, it is excluded from the operation of the hearsay rule which would otherwise prevent the admission of such testimony. Primavera, 608 A.2d at 515; Cooper v. Burns, 545 A.2d 935 (Pa. Super. 1988).

However, an expert is not permitted simply to repeat another's opinion or data without bringing to bear his own expertise and judgment. Primavera, 608 A.2d at 521; Foster v. McKeesport Hospital, 394 A.2d 1031 (Pa. Super. 1978). Further, an expert also cannot introduce the data or opinion of another unless the expert also uses his or her own knowledge and judgment.

12

<u>Young v. County of Lebanon Transit Authority</u>, 942 A.2d 967 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 958 A.2d 1049 (Pa. 2008).

In the present controversy, the WCJ and the Board found that Dr. McGuire's causation opinion was based upon that of another treating physician, Dr. Ram. WCJ Opinion at 7; Board Opinion at 9; R.R. at 9a, 23a. The WCJ and Board also found that Dr. McGuire did not express his opinion as an expert, but rather that he simply "repeated those opinions of Dr. Ram." WCJ Opinion at 7; R.R. at 9a. <u>See</u> <u>also</u> Board Opinion at 9; R.R. at 23a.

Again, it is well settled that the WCJ is the ultimate fact-finder in workers' compensation proceedings and has exclusive authority over the weight and credibility of the testimony. This includes the authority to accept or reject the testimony of any witness, including physicians, in whole or in part. <u>Channellock, Inc. v. Workers' Comp. Appeal Bd. (Reynolds)</u>, 72 A.3d 731, 741 (Pa. Cmwlth. 2013). The WCJ's findings are binding on appeal when supported by substantial evidence of record. <u>Channellock, Inc.</u>, 72 A.3d at 741. The WCJ's finding that the testimony of Dr. Pickering was more credible and persuasive as to the causation of the foot ulcers that ultimately lead to the amputation of Decedent's leg was supported by substantial, competent and credited evidence of record. Accordingly, the finding is binding. The Board did not err in affirming the WCJ's decision and order.

Consequently, as no error of law was committed and the findings of fact associated with the WCJ's conclusion that Claimant failed to meet her burden to prove that the amputation of Decedent's lower leg and his death were causally

related to his accepted October 23, 2013 work injury, this Court must affirm the decision of the Board.

_____
BERNARD L. McGINLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet Drummond, alleged dependent :
of Tyrone Drummond, deceased, :
                Petitioner :
                       :
            v. :
                       :
Workers' Compensation Appeal :
Board (Leadership Learning Partners), :   No. 2210 C.D. 2014
               Respondent :

# **O R D E R**

AND NOW, this 17th day of November, 2015, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

_____
BERNARD L. McGINLEY, Judge