IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugena B. Cowen, : 
                Petitioner : 
           : 
           : 
      v. : 
           : 
Department of Corrections (Workers' : 
Compensation Appeal Board), :   No. 434 C.D. 2023
           Respondent :   Submitted: September 9, 2024

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: October 15, 2024

Eugena B. Cowen (Claimant) petitions for review from the February 16, 2023, order of the Workers' Compensation Appeal Board (Board). The Board affirmed the July 8, 2022, order of the Workers' Compensation Judge (WCJ), which addressed multiple petitions. Upon review, we affirm.

## I. Factual & Procedural Background

Claimant, a corrections officer, sustained a work-related injury on February 19, 2019, when she was 47 years old. Employer's Supplemental Reproduced Record (S.R.R.) at 108b. Employer initially issued a medical-only Notice of Compensation Payable (NCP) accepting the injury as "cervical/bilateral upper arm and shoulder strains." *Id.* Employer subsequently amended its initial

NCP to describe the injury as "cervical/left shoulder strain" and to reflect that as of March 20, 2019, Claimant would receive wage loss benefits.[1] *Id*.

Subsequently, both sides filed multiple petitions, the following of which are relevant to this appeal. On February 10, 2020, Claimant filed a review petition alleging additional left shoulder injuries. S.R.R. at 108b. On December 15, 2020, Claimant filed another review petition alleging lower back injuries. *Id*. at 109b. On August 4, 2021, Claimant filed another review petition alleging additional cervical issues at the C4-5 level. *Id*. On October 22, 2021, Employer filed a suspension petition alleging that it offered Claimant modified-duty work within her medical restrictions beginning on August 6, 2021, but that she had not returned to work. *Id*. at 110b.

At a December 15, 2020, hearing, Employer's counsel stipulated to a disc herniation at the C5-6 level and agreed to pay for cervical surgery that Claimant underwent in February 2020. Certified Record (C.R.) at 211 & 213. At the same hearing, Claimant testified for the first time. She worked for Employer at the State Correctional Institution for female and young adult offenders at Muncy (SCI-Muncy) since 2000. *Id*. at 219. She was injured while moving a machine to test inmates for drug use, which she did every Tuesday. *Id*. at 220. The machine weighs 64.5 pounds. *Id*. It is in a carrying case with a handle and wheels but to protect the machine, it cannot be "bumped" up and down steps, so it has to be physically lifted and carried. *Id*. On the date of injury, she was carrying the machine up steps with both hands when she felt a sharp pain in her neck and left shoulder. *Id*. at 222-23.

---

[1] Due to her pre-injury position as a corrections officer, Claimant received her full salary untaxed pursuant to the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638. Certified Record (C.R.) at 516-17. Certified Record references are to electronic pagination.

2

Another officer helped her with the machine, and she was able to complete the inmate drug testing for the day; then the other officer took the machine downstairs for her. *Id.* at 223.

She completed an incident report and went to the facility's infirmary that day. C.R. at 223. Several days later, she went to one of Employer's panel doctors and reported pain in her neck, left shoulder, and lower back. *Id.* at 225. She acknowledged a prior lower back injury when she slipped on ice in 2009 but stated that this pain was different. *Id.* at 227. Since then, she has seen multiple doctors for different injuries from the February 2019 incident. *Id.* at 228. Dr. Rodwan Rajjoub, M.D., a neurosurgeon, performed surgery on her neck in February 2020 and on her lower back in September 2020; he had not yet released her to return to work in any capacity. *Id.* at 229-30. She saw Dr. Campbell, an orthopedist, for her left shoulder. *Id.* She still has sharp and dull pain in her neck, back, and shoulder, and mobility issues. *Id.* at 230-31. Her neck pain ranges from 4 out of 10 to 8-9/10, her back pain ranges from 4 out of 10 to 7-8 out of 10, and her left shoulder pain ranges from 2 out of 10 to 4 out of 10. *Id.* at 232-33. She has never been pain-free since the incident. *Id.* at 233.

As of the December 2020 hearing, Claimant did not feel she could return to her full-duty work, which sometimes included restraining inmates. C.R. at 234-35. Since her lower back surgery in September 2020, she wears a brace every day and takes prescription muscle relaxers along with Tylenol and Advil. *Id.* at 237. She will soon receive her first series of steroid injections from Dr. Campbell for her left shoulder. *Id.* at 241. She denied telling Dr. Stephen Cash, one of Employer's independent medical exam (IME) doctors, that her left shoulder pain was sporadic and "not so bad." *Id.* at 242. She denied telling another of Employer's doctors, Dr.

3

Simmons, that her February 2020 neck surgery gave her some relief from her neck pain. *Id*. at 244. She wore lidocaine patches every day for her neck pain. *Id*. at 247-48. The September 2020 lower back surgery did not help. *Id*. at 252. For about a month after the February 2019 incident but before she went out of work, she worked light duty monitoring inmates on video in the restricted housing unit (RHU); looking at the 8-10 different video camera feeds required her to look up, down, and from side to side, which irritated her neck. *Id*. at 254 & 257-58. She did not feel she could do that job as of the December 2020 hearing because her neck was not better. *Id*. at 255. At a March 16, 2021, hearing, Claimant's counsel advised that Claimant's doctors had decided to postpone any potential surgery on her left shoulder "until the cervical and lumbar issues have been attended to." C.R. at 269.

At an August 2021 hearing, Claimant's counsel informed the WCJ that he wished to withdraw his representation of Claimant as they had irreconcilable differences about how to proceed in her case. C.R. at 303. The WCJ held a September 2021 hearing on the issue. Claimant maintained that she disagreed with her attorney's plan to withdraw the pending review petitions seeking to add lower back and left shoulder injuries, even though she acknowledged that she had no supporting medical evidence for them at that time. *Id*. at 380 & 383-84. Claimant's counsel reiterated his request to withdraw representation of Claimant on the basis of their fundamental disagreement on how to proceed, but declined to testify as to details as he did not want to breach attorney-client privilege. *Id*. at 380-81. On September 27, 2021, the WCJ issued an interlocutory order stating that in light of the fundamental disagreement between Claimant and her counsel, counsel's request to withdraw was granted. *Id*. at 98-99. The order advised Claimant that the litigation

4

would continue whether she secured new counsel or not and that a status hearing would be held in 30 days for her to present new counsel or continue *pro se*.

At the next hearing on October 26, 2021, Claimant stated that she had been unable to find a new attorney. C.R. at 398. The WCJ advised Claimant that any medical depositions she wished to take in support of her review petitions and in opposition to Employer's suspension petition were to be completed within 60 days of that hearing. *Id*. at 403-09. At the next hearing in January 2022, a new WCJ presided due to the prior WCJ's retirement. C.R. at 420. Claimant appeared *pro se*. *Id*. She had been unable to take any medical depositions within the 60-day timeframe set by the former WCJ and the current WCJ declined to further extend the discovery deadline or accept medical records that were not supported by a doctor's deposition. *Id*. at 424-27.

At a February 15, 2022, hearing, Claimant acknowledged receiving a July 2021 letter from Employer offering a light-duty position in the RHU video monitoring area. C.R. at 447-48. She stated that she had not accepted that position because she did not feel able to work in any capacity that involved potential inmate contact. *Id*. at 448-49. She had asked for a mailroom position and acknowledged that she received Employer's August and October 2021 offers of a mailroom position, but admitted that she had not returned to work. *Id*. at 449-51. Her neck pain was 4-5 out of 10; she could turn her head from side to side a little bit better than before and was able to drive short distances. *Id*. at 460-61. She did not have shoulder pain because she was very careful not to move it in ways that made it hurt. *Id*. at 461-62. She still took muscle relaxers, used lidocaine patches, and had been prescribed Mobic and Oxycodone for pain. *Id*. at 462.

5

At the February 2022 hearing, William Frantz testified for Employer. He is the deputy superintendent for facilities management and a supervisor in the RHU at SCI-Muncy. C.R. at 466. He confirmed that Employer offered Claimant a full-time light-duty position in the RHU at her regular pay rate. *Id*. at 468-69. The position allowed Claimant to sit, stand, and change position as needed. *Id*. at 469. She would be in a "raised control bubble" with a swivel chair. *Id*. at 469-70. She would have to answer the phone, relay phone messages to RHU personnel using a radio, maintain a visitor logbook, and prepare some reports based on information provided to her by other RHU officers. *Id*. at 469-74. Frantz stated that video security is conducted in the RHU entry area and other specific RHU areas, so Claimant would not have to do video monitoring, although the area where she would work had multiple video monitors and the offer letter stated that she would. *Id*. at 472. Inmate contact and interaction would be minimal and in the presence of other officers; she would not have to do any inmate restraint. *Id*. at 475-76. Meals would be delivered to her to eliminate inmate contact in the facility's dining area. *Id*. at 476. Frantz stated that Claimant's treating doctor, Dr. Rajjoub, had approved this position for her. *Id*. at 476-77. The position was available for Claimant as of the February 2022 hearing. *Id*. at 478.

During Claimant's *pro se* cross-examination, Frantz acknowledged that the RHU bubble does have video monitors and that some perspectives might require the person to stand up or move their neck as needed for a full or better view. C.R. at 482. He could not guarantee that the person would never have any inmate contact or need to restrain an inmate. *Id*. at 483-84. However, on redirect examination, he stated that in his experience, nobody working in the bubble had ever had to restrain an inmate. *Id*. at 484.

6

At the February 2022 hearing, Adam Swalm also testified for Employer. He is a work-related injury litigation analyst for the Commonwealth and is overseeing this matter. C.R. at 506. He confirmed that Dr. Rajjoub had approved the July 2021 job offer for light duty in the RHU. *Id*. at 509. Claimant had not returned to that position and had requested a mailroom position that would entail no inmate contact or potential for inmate contact. *Id*. at 510. Employer offered Claimant a mailroom job in August 2021 but she did not return to work. *Id*. at 511. This was during the time when Claimant's counsel was withdrawing and Swalm explained that rather than file a suspension petition at that time, Employer reoffered the mailroom position in October 2021. *Id*. at 512-14. Claimant still did not return to work and had not as of the February 2022 hearing, but the RHU and mailroom jobs were both still available. Swalm stated that Claimant had been collecting her full and untaxed salary since going out of work in March 2019 due to her eligibility for Heart and Lung Act benefits, but that upon her return to work, regular deductions, such as for taxes and medical benefits, would resume. *Id*. at 518-19.

Dr. Rajjoub testified for Claimant in a July 2021 deposition, which occurred while Claimant was still represented by counsel. S.R.R. at 544b. He performed fusion surgery in February 2020 on Claimant's neck at the C5-6 level. *Id*. at 545b. However, as of early 2021, she still reported neck, lower back, and left shoulder pain. *Id*. at 563b-66b. As of the date of Dr. Rajjoub's deposition, Claimant's post-surgery condition was stable, but she was not fully recovered from her cervical issues and still reported occasional shoulder pain. *Id*. at 572b-73b. Claimant's herniation had not recurred, but her ongoing pain reflected "problem[s] at C4-5, narrowing the disc space, which sometime[s] can be adjacent level disease" caused by fusion surgery. *Id*. at 588b-90b. Dr. Rajjoub added that since the

7

February 2020 surgery, "the C4-5 disc is worse right now, lost about 25% of its height. And that's a new thing she had. And that could be from the trauma to the ligament" and "can be also [an] additional factor for continuing pain" due to aggravation. *Id*. at 589b & 592b. He concluded, however, that although the changes at C4-5 were "a little bit faster" than would normally be attributable to age-related degeneration, he could not definitively attribute her ongoing pain to conditions at C4-5. *Id*. at 590b & 600b-01b. He would release her to light-duty work that did not entail heavy lifting or restraining inmates. *Id*. at 574b-76b. He would release her to light duty in the RHU if she was able to use a swivel chair to protect her neck. *Id*. at 575b-76b.

Regarding Claimant's lower back, Dr. Rajjoub reviewed February 2020 lumbar magnetic resonance imaging (MRI) that showed anterolisthesis at L4-5 and degenerative disc disease at L4-5 and L5-S1. S.R.R. at 556b. A March 2021 MRI showed changes at the L4-5 level that the radiologist characterized as arthritic changes with osteophyte. *Id*. at 570b. However, the deposition largely focused on Claimant's cervical conditions, which Dr. Rajjoub had directly treated, and he did not opine further on Claimant's lower back.

Dr. Maria Sumas, M.D., a neurosurgeon, testified for Employer in an August 2021 deposition, which occurred while Claimant was still represented by counsel. S.R.R. at 756b. She saw Claimant for an IME in August 2020. *Id*. at 762b. Claimant reported neck, left shoulder, and lower back pain. *Id*. at 768b-70b. Concerning Claimant's lower back, Dr. Sumas relied on her report, which stated that her exam reflected full range of motion, no spasms, and only mild tenderness. *Id*. at 775b & 876b. Regarding Claimant's neck, Dr. Sumas's exam and review of Claimant's post-surgical MRIs revealed no objective basis for Claimant's report of

8

continuing neck pain. *Id*. at 780b. At the C4-5 level, Claimant's MRI showed only non-disabling mild, diffuse, age-related degenerative changes unrelated to the work injury, and did not indicate ligament damage at that level or aggravation of age-related degenerative changes in the overall cervical area. *Id*. at 782b-86b & 798b-800b. Dr. Sumas confirmed that none of Dr. Rajjoub's contemporary patient visit notes either before or after the February 2020 surgery indicated concern about the C4-5 level. *Id*. at 788b. Dr. Sumas concluded that Claimant had recovered from her work-related cervical injuries and could resume work without restrictions. S.R.R. at 790b-94b. Accordingly, she would also approve the modified position in the RHU. *Id.* at 794b-97b.

Dr. Stephen Cash, M.D., an orthopedic surgeon, testified for Employer in a November 2021 deposition, which occurred after Claimant's original counsel withdrew. S.R.R. at 905b. He saw Claimant for an IME on her left shoulder in July 2020. S.R.R. at 908b. He reviewed a May 2019 note from Dr. Campbell stating that Claimant reported relief from steroid injections and that no further treatment was needed. *Id*. at 911b. Dr. Cash also reviewed a May 2019 left shoulder MRI that showed only age-related degenerative changes. *Id*. at 918b-19b. When he asked Claimant about her left shoulder; she told him that she "rarely had shoulder discomfort." *Id*. at 912b-13b. On examination, she had full range of movement with only "a little bit of soreness" on overhead reaching. *Id*. at 914b. The examination was otherwise normal with no evidence of injury beyond the accepted strain. *Id*. at 917b-18b. As of the IME, Claimant's work-related left shoulder strain had fully recovered, and any ongoing issues were due to age-related conditions. *Id*. at 919b-21b. She could resume either full-duty work or the light-duty RHU position. *Id.* at 922b-25b.

9

Claimant, *pro se*, cross-examined Dr. Cash. She stated that at the IME, he grabbed her arm, "put it up high," she screamed, and he said "oh, it looks like you won't be able to be a [corrections officer] again." S.R.R. at 929b. She added that at the IME, Dr. Cash refused to look at MRI results that she brought on a CD. *Id.* She added that when she told him that she rarely had shoulder pain, she meant that she only had pain when she moved a certain way that did cause her pain. *Id.* at 933b. When asked by Employer's counsel to question Dr. Cash, Claimant asked if it was possible that the incident could have aggravated any preexisting age-related left shoulder issues. *Id.* at 932b. Dr. Cash replied that based on his examination and records review, Claimant's injury was limited to the accepted left shoulder strain, that no structural damage had occurred, and that the strain had fully resolved with Dr. Campbell's steroid injections. *Id.* at 932b-33b.

The record subsequently closed and the WCJ issued an opinion and order on July 8, 2022. The WCJ denied Claimant's review petitions seeking to add additional injuries. S.R.R. at 80b. The WCJ also granted Employer's suspension petition based on the light-duty RHU position. *Id.* at 81b. On Claimant's appeal, the Board affirmed. *Id.* at 115b-18b.

## II. Issues

Claimant's *pro se* petition for review asserts that she received ineffective assistance of counsel. Petition for Review at 2-4. Her petition for review otherwise lacks a general statement of issues, but Pennsylvania Rule of Appellate Procedure 1513(d)(5) states that "the omission of an issue from the statement shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record." Pa.R.A.P. 1513(d)(5). The Board was able to address the

10

following issues based on the record: the WCJ's denial of Claimant's review petitions seeking to add additional injuries and the WCJ's grant of Employer's suspension petition based on the offered light-duty RHU position. Accordingly, this Court will address the merits of these issues along with Claimant's assertions concerning her former attorney.[2]

### III. Discussion

### A. Claimant's Allegations Against her Former Attorney

"The substantive due process right to effective assistance of counsel has never been extended to civil or administrative proceedings[.]" *Johnson v. Workmen's Comp. Appeal Bd. (Bernard S. Pincus Co.)*, 321 A.2d 728, 730 (Pa. Cmwlth. 1974). However, in workers' compensation, an allegation of ineffective assistance of counsel may be treated by the Board as a request for rehearing on the underlying petition, order, or ruling. *Bickel v. Workmen's Comp. Appeal Bd. (Williamsport Sanitary Auth.)*, 538 A.2d 661, 663 (Pa. Cmwlth. 1988). In *Bickel*, the claimant's original attorney promised on the record that the claimant's treating doctor would be deposed in support of the claimant's claim petition, then failed to take the deposition and provided no explanation; without medical evidence, the claimant's claim petition was denied. *Id*. at 662. The Board affirmed on the merits and denied the claimant's petition for a rehearing, which was filed when the claimant obtained new counsel. *Id*. On appeal, this Court found "no reasonable explanation

---

[2] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *DiPaolo v. UPMC Magee Women's Hosp. (Workers' Comp. Appeal Bd.)*, 278 A.3d 430, 433 n.5 (Pa. Cmwlth. 2022).

for counsel's actions," reversed the Board's denial of a rehearing as an abuse of discretion, and remanded to the Board for further proceedings. *Id*. at 662-63.

In *Martell v. Workers' Compensation Appeal Board (Doyle Equipment)*, 707 A.2d 242 (Pa. Cmwlth. 1998), this Court qualified *Bickel*, noting that a rehearing is not warranted "every time a losing party can point to some evidence which his attorney did not introduce," but should be granted in "extraordinary circumstances" where the circumstances implicate a manifest injustice. *Id*. at 244. There, in termination proceedings, the employer presented medical and surveillance evidence indicating that the claimant had fully recovered. *Id*. at 243. Although the claimant testified that he continued to experience pain, his attorney did not present medical testimony in opposition to the employer's evidence and the termination petition was granted. *Id*. The Board affirmed and denied the claimant's petition for rehearing. *Id*. On the claimant's appeal, this Court affirmed, concluding:

> [W]hile the reasons of counsel for not presenting medical evidence have never been explored in the record, under the circumstances of this case, they are as readily explained as strategic decisions as negligence. At all events, this case does not present the kind of apparent manifest injustice that was evident in the cases cited, and we believe only in such extraordinary circumstances may the Board be found to have abused its discretion in denying rehearing for the presentation of additional evidence.

*Id*. at 244.

In this context, as long as the claimant raises and preserves the issue, "[t]he decision of whether to grant a rehearing is for the Board. Our scope of review in such cases is limited to whether the Board abused its discretion." *Mitchell v. Workmen's Comp. Appeal Bd. (Neal Tree Serv.)*, 565 A.2d 224, 225 (Pa. Cmwlth.

1989).  In *Bickel* and *Martell*, before those matters reached this Court, the Board had already denied the claimant's request for a rehearing.  *Martell*, 707 A.2d at 243; *Bickel*, 538 A.2d at 662; *see also Finck v. Union Cnty. Comm'rs (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 1029 C.D. 2022, filed Dec. 18, 2023), slip op. at 6-7 & 8-16, 2023 WL 8706959, at **3-7 (recounting the Board's explanation for denial of rehearing, collecting cases, and affirming on basis that the Board had not abused its discretion in concluding that claimant had shown neither objective ineffectiveness of counsel or manifest injustice).  We also keep in mind that workers' compensation claimants' attorneys generally must pay litigation costs up front, including deposition fees that may run to thousands of dollars, and they can recover costs only on matters where the claimant prevails in whole or in part.  *Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 179 (Pa. Cmwlth. 2004).

Here, when Claimant appealed the WCJ's July 2022 order *pro se*, she did not formally ask for a rehearing, but raised her ineffective assistance of counsel claim to the Board, stating: "I would like to appeal due to not having proper counsel, not being able to obtain proper counsel.  If I have the chance to obtain an attorney . . . you will see that the evidence doesn't add up."  C.R. at 119.  She asserted that her former attorney had assured her he would litigate her injuries fully, but she came to believe that he had no intention of doing so and wanted her to accept a settlement; when she refused, she believed he began acting against her interests.  *Id*. at 120.

The Board acknowledged that Claimant's counsel had withdrawn from representation and stated that with regard to Claimant's review petitions, for which she had the burden of proof, she "seems to attribute the lack of additional medical evidence to strategic decisions of her former counsel, which led to the breakdown of the attorney/client relationship.  Notwithstanding, Claimant was given the opportunity

13

to obtain counsel and either did not or could not do so." S.R.R. at 115b. The Board proceeded to address and affirm the WCJ's denial of Claimant's review petitions and grant of Employer's suspension petitions. *Id*. at 115b-18b.

Claimant re-raised her claim regarding her former counsel to this Court in her *pro se* petition for review and she argues it in her brief, which recounts her understanding of counsel's statements and explanations to her prior to his withdrawal.[3] Petition for Review at 2-4; Claimant's Br. at 3-4. First, Claimant disagrees with her former attorney's alleged refusal to depose Dr. Campbell, who treated Claimant's left shoulder with steroid injections early in this matter. Claimant's Br. at 3-4. Claimant asserts that counsel told her a deposition would be futile because Dr. Campbell had not attributed more than a strain to the work incident, which Employer had already accepted as part of the description of injury. *Id*. As recounted by Claimant, counsel's decision against deposing Dr. Campbell was a reasonable strategic decision.

Next, Claimant alleges that her former attorney should have sought out second opinions from other doctors in order to more aggressively litigate her work-related neck injuries beyond the C5-6 conditions accepted by Employer. Claimant's Br. at 3-4. As will be further addressed below, Dr. Rajjoub, who performed Claimant's cervical surgery and therefore had the best perspective on her condition, could not unequivocally attribute any additional cervical issues to the February 2019

---

[3] For purposes of this opinion, we will treat Claimant's assertion in her appeal to the Board that new counsel would have demonstrated that "the evidence doesn't add up," C.R. at 119, as a request for a rehearing. Accordingly, we deem this issue to have been sufficiently preserved for appellate review. *See Boulin v. Brandywine Senior Care, Inc. (Workers' Comp. Appeal Bd.)*, 307 A.3d 845, 856 (Pa. Cmwlth. 2024) (stating that "[a]lthough the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written pro se submission than is fairly conveyed in the pleading").

14

work incident. Therefore, counsel's alleged refusal to seek out second opinions on Claimant's neck injuries was a reasonable strategic decision.

Lastly, Claimant states that after she rejected her former attorney's recommendation of a settlement offer allegedly tendered by Employer, he "gave up on me and left me out to dry," then "red flagged me" among other workers' compensation attorneys so that she could not obtain replacement counsel after he withdrew from representing her. Claimant's Br. at 3-4. Regarding Claimant's latter allegations, she neither presented nor proffered evidence to the Board. However, evaluating settlement offers in light of the possible cost and likelihood of success of further litigation is a key strategic function of claimant-side workers' compensation counsel. Based on Claimant's recounting, we cannot say that counsel's recommendation that she accept the alleged settlement offer and his subsequent decision to withdraw in light of her refusal and other allegations regarding the deterioration of their relationship was unreasonable. It also does not resemble what occurred in *Bickel*, where the claimant's attorney promised medical evidence, failed to provide it, and presented no reasonable basis for that failure.

The Board did not undertake a formal analysis of *Bickel* and *Martell*, which require a claimant to show that counsel's actions or inactions had no strategic or reasonable basis and led to a manifest injustice in order to warrant a rehearing. However, the Board's above-quoted statement reflects a determination that Claimant's allegations are based on her disagreement with counsel's "strategic decisions" and that her losses before the WCJ cannot be placed at her former counsel's feet. S.R.R. at 115b. Having examined Claimant's allegations to this Court regarding counsel's approach prior to his withdrawal, we cannot say this was an abuse of discretion on the Board's part. Because Claimant has not shown that her

15

former counsel's actions or inactions lacked any reasonable or strategic basis, we do not reach the question of whether Claimant sustained a manifest injustice as a result of those actions or inactions. Claimant has not established that she received ineffective assistance of counsel. Accordingly, a remand to the Board for a rehearing is not warranted.

## B. Review Petitions to Add Injuries

Pursuant to the Workers' Compensation Act (Act),[4] the proper procedure to expand the description of injury in an NCP is a review petition under Section 413(a), 77 P.S. § 771. Where there is no obvious connection between the accepted work-related injury and any alleged additional work-related injuries, the burden is on the claimant to prove with unequivocal medical evidence that the alleged additional injuries were caused by the incident. *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011).

Medical testimony is unequivocal "if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists." *Lewis v. Workmen's Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 472 A.2d 1176, 1177 (Pa. Cmwlth. 1984). "[T]he testimony as a whole must contain a requisite level of certainty necessary to deem it unequivocal.*" Moyer v. Workers' Comp. Appeal Bd. (Pocono Mountain Sch. Dist.)*, 976 A.2d 597, 599 (Pa. Cmwlth. 2009). The doctor need not use legalistic or "magic words" such as "reasonable degree of medical certainty," but the testimony cannot leave doubt as to elements like causation or suggest that a condition "may have" resulted from a

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501 - 2710.

work incident. *Reinforced Molding Corp. v. Workers' Comp. Appeal Bd. (Haney)*, 717 A.2d 1096, 1098 (Pa. Cmwlth. 1998).

Here, Employer accepted Claimant's cervical injuries at the C5-6 level and a left shoulder strain. C.R. at 211 & 213; S.R.R. at 108b. Claimant filed review petitions seeking to add lower back injuries and more extensive left shoulder and neck injuries; these will be addressed in turn. C.R. at 11, 49 & 70.

Regarding Claimant's lower back, she testified that she reported stabbing lower back pain when she first saw Employer's panel doctors. C.R. at 225-26. Dr. Rajjoub performed a lower back surgery in September 2020, which Claimant stated did not help. *Id*. at 229 & 252. Dr. Rajjoub testified that he reviewed a February 2020 lumbar MRI, taken about a year after the incident, that showed anterolisthesis at L4-5 and degenerative disc disease at L4-5 and L5-S1. S.R.R. at 556b. A March 2021 MRI showed changes at the L4-5 level that the radiologist characterized as arthritic changes with osteophyte. *Id*. at 570b. However, Dr. Rajjoub's deposition largely focused on Claimant's cervical conditions and he did not opine further on Claimant's lumbar area. Shortly after Dr. Rajjoub's deposition, Claimant's counsel withdrew, and Claimant, unable to engage new counsel and proceeding *pro se*, took no further medical depositions. Dr. Sumas testified that Claimant reported lower back pain at the IME, but Dr. Sumas's examination reflected only mild tenderness and no spasms or range of motion issues. S.R.R. at 775b & 876b. Dr. Cash testified for Employer as to Claimant's left shoulder and did not address her lower back. S.R.R. at 790b & 919b-21b.

The WCJ found Claimant generally credible, but denied her review petition to add lower back injuries because Claimant failed to present medical evidence connecting any reported lower back conditions to the work incident.

S.R.R. at 79b & 81b. The Board affirmed, acknowledging Claimant's assertion that her former attorney's decisions were the reason she had no expert medical evidence, but noting that Claimant had been given time to secure new counsel and "either did not or could not do so." *Id*. at 115b.

Regarding Claimant's left shoulder, Employer accepted a strain. S.R.R. at 108b. Claimant's review petition sought to include a labral tear, impingement syndrome, and exacerbation/aggravation of degenerative changes. *Id*. at 74b. Claimant testified that her left shoulder hurt when the incident occurred and continued to hurt. C.R. at 222-23 & 230-31. Dr. Rajjoub, the only doctor to testify for Claimant, had not treated her shoulder and did not address it. Dr. Cash testified for Employer that the notes of Dr. Campbell, who treated Claimant's shoulder, indicated that Claimant reported her pain had largely resolved after steroid injections. S.R.R. at 911b. When Dr. Cash asked Claimant about her shoulder at the IME, she told him that she "rarely had shoulder discomfort." *Id*. at 912b-13b. Dr. Cash diagnosed the accepted left shoulder strain and concluded that it was fully recovered, with any ongoing issues due solely to age-related changes. *Id*. at 917b-21b.

The WCJ found Claimant's testimony concerning her condition generally credible. S.R.R. at 76b. However, the WCJ stated that Claimant had provided no expert medical evidence concerning her left shoulder. *Id*. at 79b. As such, the WCJ concluded that other than Claimant's recovered left shoulder strain, she had not established more extensive shoulder conditions due to the work incident and denied her review petition in that regard. *Id*. at 80b. The Board affirmed, acknowledging Claimant's assertion that her former attorney's decisions were the

18

reason she had no expert medical evidence, but noting that Claimant had been given time to secure new counsel and "either did not or could not do so." *Id*. at 115b.

Regarding Claimant's neck, Employer accepted liability for injuries at the C5-6 level and paid for Dr. Rajjoub's February 2020 fusion surgery in that area. S.R.R. at 108b; C.R. at 211 & 213. Claimant testified that after the surgery, she continued to have neck pain. C.R. at 247-48 & 460-61. Dr. Rajjoub testified that Claimant's herniation had not recurred, but her ongoing pain reflected "problem[s] at C4-5, narrowing the disc space, which sometime[s] can be adjacent level disease" caused by fusion surgery. S.R.R. at 588b-90b. He added that since the February 2020 surgery, "the C4-5 disc is worse right now, lost about 25% of its height. And that's a new thing she had. And that could be from the trauma to the ligament" and "can be also [an] additional factor for continuing pain" due to aggravation. *Id*. at 589b & 592b. He concluded, however, that although the changes at C4-5 were "a little bit faster" than would normally be attributable to age-related degeneration, he could not definitively attribute her ongoing pain to conditions at C4-5. *Id*. at 590b & 600b-01b.

Dr. Sumas testified for Employer that she detected no objective basis for Claimant's ongoing neck pain. S.R.R. at 780b. She added that at the C4-5 level, Claimant's MRI showed only non-disabling mild, diffuse, age-related degenerative changes unrelated to the work injury, and Dr. Sumas did not detect ligament damage at that level or aggravation of age-related degenerative changes in the overall cervical area. *Id*. at 782b-86b & 798b-800b. She confirmed that none of Dr. Rajjoub's contemporary patient visit notes either before or after the February 2020 surgery indicated concern about the C4-5 level. *Id*. at 788b.

19

The WCJ generally credited Claimant's and Dr. Rajjoub's testimony. S.R.R. at 76b & 79b. However, the WCJ concluded that Dr. Rajjoub's testimony concerning neck injuries other than at C5-6 was equivocal. *Id*. at 79b. Instead, the WCJ credited Dr. Sumas's testimony that her exam and records review indicated that any issues other than at C5-6 were due to age-related degeneration and could not be attributed to the work incident. *Id*. The Board, noting that WCJs have complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight, affirmed. *Id*. at 115b.

As noted, expert medical evidence, particularly unequivocal testimony by a doctor, was necessary for Claimant to establish causation and succeed on her review petition asserting more extensive neck injuries. *See City of Pittsburgh*, 11 A.3d at 1075. Dr. Rajjoub, who performed Claimant's neck surgery at C5-6 and was best positioned to opine as to additional neck conditions she may have had or developed as a result of the work incident, presented only the possibility of causation and was unable to provide unequivocal testimony. In the absence of unequivocal testimony from Dr. Rajjoub, the WCJ did not err in denying Claimant's review petition seeking to add more extensive neck conditions to the description of Claimant's injuries.

We also acknowledge Claimant's averred inability to retain new counsel, which left her unable to obtain expert medical evidence for her claim of additional injuries. However, *pro se* litigants are subject to the same rules and standards as counseled litigants. *Kozicki v. Unemployment Comp. Bd. of Rev.*, 299 A.3d 1055, 1063 (Pa. Cmwlth. 2023). Although the WCJ found Claimant generally credible as to her ongoing pain, medical evidence, particularly unequivocal testimony by a doctor, was necessary for her to establish causation and succeed on

20

her review petition. See *City of Pittsburgh*, 11 A.3d at 1075. In the absence of that evidence, the WCJ did not err in denying Claimant's review petition seeking to add to the description of Claimant's injuries.

In light of the foregoing discussion, we conclude that Claimant failed to meet her burden of proof on her review petitions seeking to add additional conditions to the description of injury. As such, the WCJ did not err in denying those petitions and the Board did not err in affirming the WCJ's determinations.

## C. Employer's Suspension Petition Based on Job Offer in the RHU

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374 (Pa. 1987), our Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to suspend a claimant's compensation payments by means of a job offer:

> 1. The employer must produce medical evidence of a change in the employee's condition.
>
> 2. The employer must produce evidence of a referral or referrals to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance *e.g.*, light work, sedentary work, etc.
>
> 3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).
>
> 4. If the referral fails to result in a job then the claimant's benefits should continue.

21

*Id.* at 380. If the claimant does not exercise good faith with regard to the offered position, then her benefits can be suspended.[5] *See Dixon v. Workers' Comp. Appeal Bd. (Medrad, Inc.)*, 134 A.3d 518, 522 (Pa. Cmwlth. 2016). In this context, bad faith does not require "overt malfeasance on the part of the claimant"; it may be found if the claimant merely "refus[es] to follow up on a job referral without a sufficient reason." *Napierski v. Workers' Comp. Appeal Bd. (Scobell Co., Inc.)*, 59 A.3d 57, 61 (Pa. Cmwlth. 2013). This determination is a matter of credibility and evidentiary weight reserved to the WCJ. *Dixon*, 134 A.3d at 524.

Here, Employer's fact witness William Frantz testified that in July 2021, Employer offered Claimant full-time light-duty work at her regular salary. C.R. at 468-84. The position in the RHU security bubble was largely sedentary and clerical, and a swivel chair was available. *Id.* Regarding Claimant's expressed concerns that she might worsen her injuries if she had to restrain an inmate, Frantz could not guarantee that this would absolutely never happen, but stated that in his experience, nobody working in the bubble had ever had to restrain an inmate and any inmate contact would be incidental and in the presence of other corrections officers. *Id.* at 483-84. He added that although the bubble has video monitors, the RHU has video security at its entrance and in other necessary areas, so Claimant would not be required to constantly monitor the video monitors in the work space. *Id.* Employer's next fact witness, Adam Swalm, testified that Claimant had not returned to work at the offered RHU position, but it remained open to her. *Id.* at 509-10 & 516. Both Frantz and Swalm stated that Dr. Rajjoub, Claimant's treating

---

[5] Pursuant to Section 306(b)(2) of the Act, 77 P.S. § 512(2), an employer may also establish its entitlement to a suspension through an earning power assessment. Because Employer elected to offer Claimant modified-duty work, the common law *Kachinski* test is appropriate here. *See Channellock, Inc. v. Workers' Comp. Appeal Bd. (Reynolds)*, 72 A.3d 731 n.9 (Pa. Cmwlth. 2013).

22

doctor, had approved the offered RHU position, and the WCJ credited both of their testimonies. *Id*. at 476-77 & 509; S.R.R. at 76b.

Dr. Rajjoub confirmed that while he would not return Claimant to full-duty work, he would release her to light duty in the RHU if she was able to use a swivel chair to protect her neck. S.R.R. at 574b-76b. Both Dr. Sumas and Dr. Cash opined that Claimant was recovered enough to resume full-duty work and, as such, would also be physically able to perform the light-duty RHU position. *Id*. at 790b-97b & 919b-25b.

Claimant testified in December 2020 that she worked the RHU position for about a month after the incident until she went out of work, that watching the video monitors hurt her neck, and that she did not feel she could do it. C.R. at 254-58. Claimant also testified in February 2022 that she did not return to the RHU position when it was offered in July 2021 because she did not feel physically able to work in any capacity that might involve potential inmate contact. *Id*. at 449.

The WCJ found Claimant's testimony generally credible and concluded that she was not fully recovered. S.R.R. at 76b & 80b. However, the WCJ also concluded that Employer carried its burden of proof to show that Claimant was physically able to perform the offered position and that her refusal to return to work for that position was in bad faith. *Id*. at 80b-81b. Accordingly, the WCJ granted Employer's suspension petition with regard to the RHU position.[6] *Id*. at 83b. The Board, finding no error in that regard, affirmed. *Id*. at 118b.

---

[6] The WCJ also found that Claimant was capable of returning to the mailroom position also offered by Employer and that her refusal to do so was in bad faith; however, the WCJ concluded that because Employer's suspension petition based on the offered RHU position was granted, Employer's suspension petition concerning the mailroom position was moot. S.R.R. at 81b.

Employer's offered RHU position satisfies the *Kachinski* test. Dr. Sumas and Dr. Cash testified that Claimant could resume her full-time duties and, by extension, the light-duty RHU position. Credited by the WCJ, this was sufficient medical evidence that Claimant's physical condition had improved. Employer also showed that Claimant was able to perform the offered RHU job, as evidenced by the permission of Dr. Rajjoub, her treating doctor, which he confirmed in his testimony. Next, the WCJ credited Frantz's testimony describing the RHU position, including the optional nature of conducting video surveillance using the multiple monitors and the unlikelihood of any inmate contact that would put Claimant in a physically vulnerable position. Although Claimant disagreed with Frantz on these points, the WCJ was within her discretion to conclude that in light of Dr. Rajjoub's medical clearance of the RHU position, Claimant failed to provide a sufficient reason for her refusal to return to work and, as such, did not act in good faith. *Dixon*, 134 A.3d at 524; *Napierski*, 59 A.3d at 61.

In light of the foregoing discussion, we conclude that Employer met its burden of proof on its suspension petition based on the offered light-duty RHU position. As such, the WCJ did not err in granting that petition and the Board did not err in affirming the WCJ's determination.

## IV. Conclusion

Claimant has not established that she received ineffective assistance of counsel. Accordingly, a remand to the Board for a rehearing is not warranted. Claimant failed to meet her burden of proof on her review petitions seeking to expand the description of injury to include lower back injuries and more extensive neck and left shoulder injuries. Employer met its burden of proof on its suspension

24

petition based on the offered RHU position. As such, the WCJ did not err in denying Claimant's review petitions and granting Employer's suspension petition and the Board did not err in affirming those determinations. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugena B. Cowen,                 :
             Petitioner       :
                                      :
        v.                       :
                                      :
Department of Corrections (Workers'   :
Compensation Appeal Board),       :     No. 434 C.D. 2023
              Respondent    :

# **O R D E R**

AND NOW, this 15th day of October, 2024, the February 16, 2023, order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge